**SIGNED THIS: August 22, 2018**

_____
**Mary P. Gorman
United States Chief Bankruptcy Judge**
_____

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| In Re ) | |
| ) | Case No. 16-91187 |
| ANTHONY J. COOPER and ) | |
| GERI L. COOPER, ) | |
| ) | Chapter 7 |
| Debtors. ) | |
| _____ ) | |
| ) | |
| NANCY J. GARGULA, ) | |
| United States Trustee for Region 10 ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Adversary No. 18-09004 |
| ) | |
| ANTHONY J. COOPER and ) | |
| GERI L. COOPER, ) | |
| ) | |
| Defendants. ) | |

## O P I N I O N

Before the Court, after trial, is an amended complaint filed by Nancy J.

Gargula, the United States Trustee ("UST"), to revoke the discharges of the Debtors, Anthony J. Cooper and Geri L. Cooper. The UST alleges that the Debtors received a 2015 federal income tax refund in the amount of $5447 and knowingly and fraudulently failed to surrender the money to the case trustee. The Debtors contend that, although they knowingly failed to surrender their tax refund, they did not act fraudulently. Because the UST met her burden of proof on all elements required, the Debtors' discharges will be revoked.

## I. Factual and Procedural Background

In anticipation of trial, the parties filed a joint pretrial statement, wherein they stipulated to the following uncontested facts:

1. Defendants filed their bankruptcy case on December 1, 2016.[1]

2. Defendants attended their § 341 meeting of creditors on January 10, 2017.

3. During the meeting of creditors on January 10, 2017, Chapter 7 trustee Roger Prillaman instructed Defendants to file an Amended 2015 Federal tax return to claim an exemption they appeared to be entitled to take.

4. During the meeting of creditors on January 10, 2017, Chapter 7 trustee Roger Prillaman explained that this tax refund may be an asset of the bankruptcy estate.

5. Defendants understood Trustee Prillaman's instructions given

---

[1]Anthony J. Cooper and Geri L. Cooper are referred to in the parties' stipulated facts as the "Defendants." Elsewhere in the Opinion, they are generally referred to as the "Debtors."

on January 10, 2017.

6. On January 10, 2017, Defendants' counsel, Donald R. McClarey, by written letter told Defendants the following: "Any tax refund that you get as a result of this would be property of your estate and would have to be turned over to Mr. Prillaman as money that could be used to make a payment to your creditors."

7. Defendants acknowledge receipt of this letter and their understanding of Attorney McClarey's instructions.

8. On March 8, 2017, Defendants signed their Amended 2015 Federal tax return and personally delivered it to Attorney McClarey's office.

9. On March 8, 2017, Attorney McClarey forwarded to Trustee Prillaman, by email, a copy of the Defendants' Amended 2015 Federal tax return signed by both Anthony Cooper and Geri Cooper and dated March 8, 2017.

10. The March 8, 2017 email from Attorney McClarey to Trustee Prillaman, referenced in paragraph 9 above, states:

-----Original Message-----
From: Donald R. McClarey <stmc60420@sbcglobal.net>
To: Trustee Prillaman <trusteeprillaman@aol.com>
Sent: Wed, Mar 8, 2017 4:19 pm
Subject: RE: Cooper- 16-91187

Dear Roger,

Attached please find a copy of the Amended U.S. 2015 Tax Return for Anthony and Gerri Cooper Bankruptcy Case no. 16-91187. As you can see, they will be getting back a refund of

$5,447.00. I have told them to forward the refund to me so that I can forward it to you after I receive it in.

Sincerely,
Don

11. On March 16, 2017, Defendants' discharges were granted.

12. On June 14, 2017, Trustee Prillaman filed a Motion for Turnover seeking the turnover of Defendants' Amended 2015 income tax refund in the amount of $5,447.00 "when received" [Doc 34].

13. Defendants acknowledge receiving by U.S. Mail a copy of Trustee Prillaman's Motion for Turnover [Doc 34].

14. The Court, pursuant to proper notice and a hearing held on July 12, 2017, granted the Motion for Turnover by Order entered July 13, 2017 [Doc 39].

15. Paragraph B of the "Order On Trustee's Motion for Turnover" [Doc 39] states:

B. Upon receipt of tax refunds, Debtors are hereby directed to immediately turn over to "Trustee Roger L. Prillaman", $5,447.00, the amount of their non-exempt Amended 2015 income tax refunds, by sending same to Trustee's office at 220 W. Main Street, Urbana, Illinois 61801.

16. Defendants acknowledge receiving by U.S. Mail a copy of this Order [Doc 39].

17. On July 20, 2017, more than one month after their receipt of the Motion for Turnover and seven days after the entry of the Order granting the immediate turnover of the $5,447 tax

refund, the Defendants, by Geri Cooper, paid $5,000 to Mark Przybylinski.

18. Mark Przybylinski purchased 1408 S. Jackson Street in Streator, IL on August 30, 2017.

19. Defendants moved into 1408 S. Jackson Street in Streater, IL from 601 S. Main, Long Point, IL, sometime during October of 2017.

20. JPMorgan Chase Bank had commenced its foreclosure against Defendants on November 18, 2014.

21. At the time of filing bankruptcy on December 1, 2016, Defendants were at least two years delinquent on the payment of their mortgage to JPMorgan Chase Bank and intended to surrender their property located at 601 S. Main, Long Point, IL. Between December 1, 2016 and their moving out in October of 2017, Defendants did not make any mortgage payments to JPMorgan Chase Bank.

22. Defendants provided Attorney McClarey with their new address and put a mail forwarding order in place at the local post office which properly reflected their new address.

23. On November 8, 2017, Trustee Prillaman filed a Motion to Compel the Defendants to turnover their 2015 tax refund in the amount of $5,447.00 [Doc 41]. The court granted this Motion by Order entered December 15, 2017 [Doc 46].

24. Defendants acknowledge receiving by U.S. Mail both this

motion [Doc 41] and the corresponding order [Doc 46].

25. After the Order on the Motion to Compel was entered on December 13, 2017, the Defendants appeared at the Federal courthouse in Urbana after the hearing, spoke with their attorney, and advised him that they had spent their income tax money on moving expenses.

26. On December 14, 2017, the following email was sent by Attorney McClarey:

-----Original Message-----
From: Donald R. McClarey <stmc60420@sbcglobal.net>
To: Trustee Prillaman <trusteeprillaman@aol.com>
Sent: Thu, Dec 14, 2017 9:05 am
Subject: Re: Chavez, 17-90991

On the Coopers, much to my astonishment, they showed up in court yesterday after you left. As I feared, they ignored my instructions and spent the refund money on moving expenses. They reside now at 1408 South Jackson, Streator, Illinois. They offered to begin to pay $300.00 a month to you. They said that they used the refund because they did not receive 3500 in move money that Chase had offered to pay them in order to get them out of the mortgaged house. They suspect that the money was pocketed by a realtor they foolishly used as a go between with Chase. They are contacting an attorney, not me, to go after the money. They said that if they recover any of those funds they would pay it over to you. Let me know your position and I will contact my clients. Hopefully they will do what they say and won't fall off the grid again.< /div>

Sincerely,
Don

27. On December 14, 2017, Trustee Prillaman responded by e-mail:

On Thursday, December 14, 2017 3:59 PM, Trustee Prillaman

        &lt;trusteeprillaman@aol.com&gt; wrote:

        Don - here are my candid impressions. Firstly, looking at the glass half full, I think it's great they showed up and communicated with you. We now know we've got some invested customers still.

        The glass half empty portion: they knowingly spent estate money when they knew they should not have, even if it was moving expenses. For them to do that, and then only offer $300 per month, doesn't seem very realistic. If I found myself in this pickle I'd shake all the bushes out there to try to come up with the money they owe and not ask the Trustee/Bankruptcy Estate to be their banker. Accepting only $300 per month (which will take 18+ months to pay), would be to reward their bad behavior.

        Please update the court's records with their new address, but please also let them know that they need to do better than what they've offered to make up for the money spent out of trust. Notwithstanding, they should start paying me whatever they can to try to make good while they figure out some other way to make the debt whole.

        Did they offer any explanation as to why they haven't communicated with you or my office, and made us have to file more motions with the court and spin our wheels?

        Roger L. Prillaman
        Chapter 7 Trustee
        Prillaman & Moore, Ltd.
        220 W. Main Street
        Urbana, IL 61801
        217.384.1300
        217.384.1318 fax

28.   On December 14, 2017, Attorney McClarey replied by email:

        -----Original Message-----
        From: Donald R. McClarey &lt;stmc60420@sbcglobal.net&gt;
        To: Trustee Prillaman &lt;trusteeprillaman@aol.com&gt;
        Sent: Thu, Dec 14, 2017 4:06 pm
        Subject: Re: COOPER - 16-91187

        Roger,

        They indicated that their mail had been delayed when they

> moved. Considering the number of letters I sent them I don't think that is much of an excuse.
> I completely concur with your concern about rewarding bad behavior. I will update their address with the court and I will advise them of your displeasure and see what I can do.
>
> Sincerely,
> Don

29. On January 19, 2018, Trustee Prillaman sent the following e-mail:

> On Friday, January 19, 2018 10:26 AM, Trustee Prillaman <trusteeprillaman@aol.com> wrote:
>
> Don - we need to pick back up this the Coopers. It's been over a month now....what is their position on paying back the money they spent out of trust. Seems like they're back to just ignoring the trustee and the system again.
>
> Roger L. Prillaman
> Chapter 7 Trustee
> Prillaman & Moore, Ltd.
> 220 W. Main Street
> Urbana, IL 61801
> 217.384.1300
> 217.384.1318 fax

30. On January 19, 2018, Attorney McClarey replied by email:

> -----Original Message-----
> From: Donald R. McClarey <stmc60420@sbcglobal.net>
> To: Trustee Prillaman <trusteeprillaman@aol.com>
> Sent: Fri, Jan 19, 2018 1:10 pm
> Subject: Re: COOPER - 16-91187
>
> I will contact them again Roger. I talked with them in Court and I sent out a letter to them after our last e-mail. Frustrating.
>
> Sincerely,
> Don

31. Despite repeated verbal and written requests made by Trustee Prillaman of the Defendants directly during their meeting of creditors and subsequently through their bankruptcy counsel and the two motions of the trustee and the two Orders of the Court, Defendants did not turn over $5,447 to the trustee, until after receipt of both the UST's Amended Complaint for Revocation of Discharges filed February 9, 2018 and Motion for Default Judgment filed March 13, 2018.

32. On March 29, 2018, Defendants tendered $5,447 of their 2017 Federal tax refund to Attorney McClarey which Attorney McClarey then forwarded to Trustee Prillaman.

33. Both Defendants have filed bankruptcy previously.

34. Defendant, Anthony J. Cooper, represented by attorney Stephen J. West, filed Chapter 7 in the Northern District of Illinois on October 16, 2001, and obtained his discharge on February 11, 2002.

35. Defendant, Geri L. Cooper, represented by attorney Charles R. Wolf, filed Chapter 7 in the Northern District of Illinois on May 17, 2005, under the name Geri L. Dodd, and obtained her discharge on August 29, 2005.

36. Defendants both understood, at the time of filing their current bankruptcy, if they had an asset that exceeded the state law exemption amount, that a trustee would have the right to take that asset or liquidate it and use those monies to pay creditors.

> 37. Defendants both understood, at the time of filing their current bankruptcy, their obligation to cooperate with the trustee in order to receive their discharge in this bankruptcy case.

Pretrial Statement at 6-12, *Gargula v. Cooper*, No. 18-09004 (Bankr. C.D. Ill. Feb. 9, 2018), Doc. 24.

At the trial held August 8, 2018, Geri Cooper was called as a witness by the UST. Mrs. Cooper testified that Trustee Prillaman did not consent to the Debtors' use of the federal tax refund money. She also admitted that she did not consult with her attorney about the impact of using the tax refund money and that she did not conduct independent research regarding the impact of taking property of the estate. Anthony Cooper also testified that Trustee Prillaman did not grant permission to the Debtors to use the tax refund. Mr. Cooper admitted that he did not consult with his attorney about the impact of using the tax refund money and that he did not conduct independent research regarding the impact of taking property of the estate.

Trustee Prillaman was called as a witness by the Debtors. He was questioned about whether, after learning that the money had been spent, he expressed a willingness to accept payments from the Debtors. The Trustee stated that he had not entered into a payment arrangement with the Debtors; he specifically referred to emails he sent to Attorney McClarey as proof that he had unequivocally declined to enter into a payment arrangement with the Debtors. He further testified that the Debtors ultimately did pay to him the amount due in full, but only after the adversary complaint was filed.

Testifying on her own behalf, Mrs. Cooper further stated that she and Mr.

Cooper had moved out of their previous home at the end of September or beginning of October 2017 because they were being evicted. According to her, the Debtors had to make a $5000 deposit on a rental house in July 2017 to hold the house for two months before they moved in as well as to cover a pet deposit, first and last months rent, and a security deposit. Mrs. Cooper testified that the source of the $5000 deposit was the tax refund. She also testified that the full amount of the tax refund was eventually paid to Trustee Prillaman.

At the close of trial, both parties presented argument. The matter is ready for decision.

## II. Jurisdiction

This Court has jurisdiction over the issues before it pursuant to 28 U.S.C. §1334. All bankruptcy cases and proceedings filed in the Central District of Illinois have been referred to the bankruptcy judges. CDIL-Bankr. LR 4.1; *see* 28 U.S.C. §157(a). Proceedings to revoke a discharge, like objections to discharge, are core proceedings. *See* 28 U.S.C. §157(b)(2)(J). This matter arises from the Debtor's bankruptcy itself and from the provisions of the Bankruptcy Code and may therefore be constitutionally decided by a bankruptcy judge. *See Stern v. Marshall*, 564 U.S. 462, 499 (2011).

## III. Legal Analysis

A debtor's discharge may be revoked, but only under limited circumstances. 11 U.S.C. §727(d). On request of the case trustee, a creditor, or the UST, a court may revoke a discharge previously granted to a debtor, if "the debtor acquired

property that is property of the estate, or became entitled to acquire property that would be property of the estate, and knowingly and fraudulently failed to report the acquisition of or entitlement to such property, or to deliver or surrender such property to the trustee[.]" 11 U.S.C. §727(d)(2).

"Revocation of a discharge is a harsh measure and runs contrary to the general policy of the Bankruptcy Code of giving Chapter 7 debtors a 'fresh start.'" *State Bank of India v. Kaliana (In re Kaliana)*, 202 B.R. 600, 603 (Bankr. N.D. Ill. 1996). Thus, complaints seeking to revoke a discharge will be strictly construed against a plaintiff and in favor of the debtor. *Richardson v. Flaugher (In re Flaugher)*, 525 B.R. 67, 71 (Bankr. C.D. Ill. 2015). The party seeking to revoke the discharge has the burden of proof. *See Matter of Yonikus*, 974 F.2d 901, 904 (7th Cir. 1992). All elements of the cause of action must be established by a preponderance of the evidence. *Grochocinski v. Eckert (In re Eckert)*, 375 B.R. 474, 478 (Bankr. N.D. Ill. 2007).

In order to succeed in this action, the UST must prove that (1) the Debtors acquired or became entitled to acquire property of the estate, (2) the Debtors failed to report their acquisition or entitlement, or to deliver or surrender the property to the trustee, and (3) the Debtors' failure was knowing and fraudulent. 11 U.S.C. §727(d)(2); *Steege v. Johnsson (In re Johnsson)*, 551 B.R. 384, 403-04 (Bankr. N.D. Ill. 2016).

The Debtors admit that the tax refund was property of the estate, that they received the tax refund, and that they spent the tax refund instead of turning it

over to the Trustee. Thus, the first and second elements of the UST's required proof have been satisfied. The Debtors also stipulated that not only did Trustee Prillaman instruct them at the meeting of creditors that the tax refund was property of the estate but their own attorney informed them that any refund they received would have to be turned over to the Trustee. Further, the Debtors stipulated that they received notice of both the motion for turnover and the motion to compel, along with copies of the orders entered after the hearings, requiring turnover of the tax refund. Thus, there is no question that the Debtors acted "knowingly" when they spent the tax refund instead of turning it over to Trustee Prillaman. The Debtors argue, however, that their discharges should not be revoked because they did not act "fraudulently" in failing to turn over the tax refund.

"Fraud" is broadly defined to mean "any deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another." *McClellan v. Cantrell*, 217 F.3d 890, 893 (7th Cir. 2000) (citing 4 Collier on Bankruptcy ¶ 523.08[1][e], p. 523-45 (15th ed. 2000)). To act "fraudulently" or with "fraudulent intent" is to intend to defraud or to engage in behavior that displays a reckless disregard for the truth. *Yonikus*, 974 F.2d at 905. Because direct evidence of fraudulent intent is rare, it may be inferred from the course of conduct of a debtor. *Id.* at 905-06.

The Debtors claim that their intent in not turning over their tax refund was not to deceive the Trustee. Rather, the Debtors said that they needed the tax

refund in order to pay a $5000 rent deposit on their new home. But the Debtors' use of the funds to acquire housing is not a defense. The issue is whether the taking of the funds was done with an intent to deceive, defraud, or cheat or was done with reckless disregard for the truth. The Debtors' conduct establishes that their acts were fraudulent and deceitful and were intended to cheat the Trustee and their creditors.

    The parties stipulated that, by March 8, 2017, the Debtors had prepared their 2015 amended tax return at Trustee Prillaman's request and were entitled to a $5447 refund; the Debtors' attorney emailed the Trustee on that day with information about the refund. In June, after not receiving the money, the Trustee filed his motion for turnover, and an order requiring turnover of the refund was entered after a hearing held on July 12, 2017. The Debtors admit receiving notice of the hearing and a copy of the order requiring turnover. Nevertheless, on July 20, 2017, the Debtors used the refund and paid their new landlord $5000. And despite repeated contacts by their attorney, they never disclosed to their attorney or to Trustee Prillaman that the refund had been spent until December 13, 2017, when they appeared late for the hearing on the Trustee's motion to compel. The inferences that must be drawn from this conduct are that the Debtors knew they were taking money that did not belong to them when they spent the refund money and that they intended to deceive the Trustee by failing to communicate with and provide disclosure of the truth about the refund to their own attorney. They took money they knew belonged to their bankruptcy estate and used it for their own

purposes and then failed to cooperate with their own attorney and the Trustee. This conduct establishes that they acted fraudulently. *See Johnsson*, 551 B.R. at 405-07 (fraud inferred from debtor's delay in actually turning over property of the estate to the trustee when the debtor was informed that it was property of the estate and ignored requests for turnover until litigation was threatened).

The Debtors point to the fact that they ultimately complied with the Court's orders by turning over the full amount of the tax refund to the Trustee on March 29, 2018. But the Debtors had a duty to fully and promptly cooperate with the Trustee in turning over property of the estate. 11 U.S.C. §521(a)(4); Fed. R. Bankr. P. 4002(a)(4). Turning over the refund more than a year after they became entitled to receive it and only after several motions and a complaint to revoke their discharges was filed is not adequate cooperation. The Debtors' delayed turnover of the tax refund does not rectify their prior conduct. *See Richardson v. Schoemperlen (In re Schoemperlen)*, 332 B.R. 179, 182 (Bankr. C.D. Ill. 2005). Equally important, a debtor should not be allowed to buy a discharge; discharges are not "bargaining chips" to be used in negotiations to obtain funds to pay creditors. *Philadelphia Indemnity Ins. Co. v. Rotert (In re Rotert)*, 530 B.R. 791, 799 (Bankr. N.D. Okla. 2015). Thus, once fraudulent conduct has occurred and a complaint has been filed to deny or revoke a discharge, a debtor cannot buy dismissal of the complaint by paying what should have been paid in the first place even if the money is going to the bankruptcy estate for distribution to creditors. *Id.* at 800.

## IV. Conclusion

The UST has met her burden of proof. The Debtors acquired possession of their 2015 federal tax refund and knowingly and fraudulently failed to turnover the funds to the Trustee despite two court orders requiring turnover and instructions to do so from both the Trustee and their own attorney. Due to their conduct, the Debtors' discharges must be revoked.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###